## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

KATHLEEN MARVE BISBEE,

     Plaintiff,

v.                                          Civ. No. 20-155 JAP/GJF

ANDREW SAUL, *Commissioner of
the Social Security Administration*,

     Defendant.

## PROPOSED FINDINGS AND
## RECOMMENDED DISPOSITION

THIS MATTER is before the Court upon Plaintiff Kathleen Marie[1] Bisbee's "Motion to Reverse and Remand for a Rehearing with Supporting Memorandum" [ECF 19] ("Motion"). The Motion is fully briefed. ECF 21 (response); ECF 22 (reply). Having meticulously reviewed the entire record and the parties' briefing, the Court recommends that the Commissioner's final decision be **AFFIRMED**, that Plaintiff's Motion be **DENIED**, and that the instant case be **DISMISSED WITH PREJUDICE**.

## I. BACKGROUND

In August 2014, Plaintiff applied for disability insurance benefits and supplemental security income, claiming disability due to conditions caused by a car accident, with a February 27, 2012, disability onset date. Administrative Record ("AR") at 29, 194–205. Initially and upon reconsideration, the Social Security Administration ("SSA") denied Plaintiff's applications. AR at 78–101. After these denials, Plaintiff requested a hearing before an administrative law judge ("ALJ"), AR at 121, which was held in June 2017. AR at 44–61. Later that month, that ALJ issued

---

[1] Plaintiff's middle name is "Marie" not "Marve." Administrative Record ("AR") at 54, 729 (stating that the Social Security Administration's records indicate that Plaintiff's middle name is Marve because when she applied for a replacement "Social Security card, they [couldn't] read [her] handwriting").

a partially favorable decision determining that Plaintiff "was not disabled prior to January 18, 2017[,] but became disabled on that date and ha[d] continued to be disabled through the date of th[e] decision [June 30, 2017]."[2]

After Plaintiff requested review by the Appeals Council, she received a consultative psychological evaluation from Eligio Padilla, Ph.D. on September 11, 2017. *Bisbee v. Berryhill*, No. 18-cv-0731 SMV, 2019 WL 1129459, at *2 (D.N.M. Mar. 12, 2019). The Appeals Council refused to consider Dr. Padilla's report, holding that it would not change the outcome of the ALJ's decision, and denied Plaintiff's request for review. *Id.* Subsequently, Plaintiff filed an action in this District arguing that the Appeals Council erred by declining to consider Dr. Padilla's report. *Id.* at *3–4. In March 2019, the Honorable Stephan M. Vidmar agreed and remanded the case to the Appeals Council to allow it "the first opportunity to evaluate the ALJ's decision in light of" Dr. Padilla's report. *Id.* at *4, 6. In May 2019, the Appeals Council in turn remanded the case to an ALJ for a new hearing. AR at 802. In November 2019, a different ALJ held another hearing. AR at 727–62. That ALJ determined, however, that Plaintiff was not disabled between February 27, 2012, and January 17, 2017. AR at 701, 718. Plaintiff timely appealed the decision to this Court. ECF 1.

---

[2] The 2017 ALJ found that while "[t]he objective medical evidence of record prior to January 17, 2017[,] d[id] not support the extent of limitations alleged by [Plaintiff,]" AR at 32, "beginning on January 17, 2017, [Plaintiff's] allegations regarding her symptoms and limitations [were] consistent with the evidence." *Id.* at 35. The difference between those two time periods can be explained by Plaintiff's development of a "large [spinal] disc protrusion." AR at 35 (citing AR at 620). This protrusion caused Plaintiff severe pain (along with other symptoms) and had to be treated via laminectomy (removal of a portion of the vertebral bone). AR at 35 (citing AR at 633). Afterward, Plaintiff continued to experience moderate to severe pain. *Id.* (citing AR at 629). Accordingly, and based largely on an opinion by Plaintiff's surgeon for that procedure, *see* AR at 35 (citing AR at 679–83), the 2017 ALJ found that Plaintiff became disabled on the date of her laminectomy. AR at 37.

## II.  PLAINTIFF'S CLAIMS

Plaintiff contends that the ALJ's decision was not based on substantial evidence because he incorrectly applied the three-step analysis set forth in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), which is used to evaluate a claimant's allegations of disabling pain. ECF 19 at 10. Plaintiff directs the Court's attention to three alleged points of error. First, she contends that "the ALJ did not provide the link required between [Plaintiff's] complaints of pain and her health history." *Id.* at 11. Second, she says that the ALJ improperly cited Plaintiff's "sporadic" performance of household tasks as establishing that, despite her pain, she could engage in substantial gainful activity. *Id.* at 12–13. Third, she avers that, in assessing Plaintiff's complaints of pain, the ALJ did not consider Plaintiff's persistent attempts to obtain treatment for her hip and back pain. *Id.* at 13– 14.

## III.  APPLICABLE LAW

### A.  Standard of Review

The Court's review of an ALJ's decision is both legal and factual. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence." (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992))).

In determining whether the correct legal standards were applied, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may reverse and remand if

the ALJ failed to "apply correct legal standards" or "show . . . [he or she] has done so." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (emphasis added). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (brackets in original) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "And . . . the threshold for such evidentiary sufficiency is not high.  Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (internal quotation marks and citation omitted).  "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

Under this standard, a court should still meticulously review the entire record, but it may not "reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004)); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the sufficiency of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Therefore, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Furthermore, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been

before it de novo." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200) (brackets omitted).

Ultimately, if the correct legal standards were applied and substantial evidence supported the ALJ's findings, the Commissioner's decision stands, and Plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin*, 365 F.3d at 1214.

### B. Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that she is unable to "engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added).

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citing 20 C.F.R. § 416.920). The claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988). In the first four steps, the claimant must show (1) that "[s]he is not presently engaged in substantial gainful activity," (2) that "[s]he has a medically severe impairment or combination of impairments," and either (3) that the impairment is equivalent to a listed impairment[3] or (4) that "the impairment or combination of impairments prevents [her] from performing [her] past work." *Williams*, 844 F.2d at 750-51; *Grogan*, 399 F.3d at 1261.

If the claimant has advanced through step four, the burden of proof then shifts to the

---

[3] If the claimant can show that she has a listed impairment, she will be found to be disabled and the analysis stops. 20 C.F.R. § 416.920(a)(4)(i-iv). Otherwise, if no listed impairment can be shown, the analysis moves on to step four. *Id.*

Commissioner to show that the claimant nonetheless retains sufficient functional capacity "to perform other work in the national economy in view of [her] age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146 n.5.

### C. Complaints of Disabling Pain

"In determining whether an individual is disabled," the SSA considers "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3P, 2016 WL 1119029, at *3.[4] Importantly, "an individual's *statements* of symptoms alone are not enough to establish the existence of a physical . . . impairment or disability." *Id.* (emphasis added). In assessing a claimant's symptoms, the SSA employs a two-step analysis. First, the SSA considers "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* Second, once such an impairment is established, the SSA "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* "In considering the intensity, persistence, and limiting effects of an individual's symptoms," the SSA examines "the entire case record, including the objective medical evidence; an individual's statements . . .; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Specifically, with regard to pain, the Tenth Circuit has long employed a slightly different (although largely similar) three-factor test, which originated in *Luna v. Bowen*, 834 F.3d 161 (10th

---

[4] The regulatory grounding for SSR 16-3P is found at 20 C.F.R. §§ 404.1529(c), 416.929(c).

6

Cir. 1987). *Luna* dictates that an ALJ evaluate the following:

> (1) Whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166–67 (10th Cir. 2012) (citing *Luna*, 834 F.2d at 161–64). In conducting this analysis, an ALJ should consider evidence like "a claimant's persistent attempts to find relief for h[er] pain and h[er] willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor . . ., the claimant's daily activities, and side effects of medication." *Id.* at 1167 (quoting *Luna*, 834 F.2d at 163–65) (internal quotation marks omitted). Notably, "so long as the ALJ 'sets forth the specific evidence he relies on in evaluating the claimant's credibility,[5] he need not make a 'formalistic factor-by-factor recitation of the evidence.'" *Id.* (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). In reviewing an ALJ's credibility determination, the Court must keep in mind that "[c]redibility determinations are peculiarly the province of the finder of fact" and should not be upset "when supported by substantial evidence." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

## IV.  THE 2019 ALJ'S FINDINGS AND DECISION[6]

"After careful consideration of all the evidence," the ALJ concluded that Plaintiff was not

---

[5] The Court notes that while many of the seminal Tenth Circuit decisions on pain evaluation speak in terms of assessing a claimant's "credibility," the SSA has since moved away from the use of such language. SSR 16-3P, 2016 WL 1119029, at *1. This semantic shift purported to clarify that subjective symptom evaluations are not an "examination of an individual's character." *Id.*

[6] Because Plaintiff does not challenge any portion of the ALJ's findings with respect to her alleged mental impairments, the Court's recounting of the ALJ's findings and decision is limited to Plaintiff's alleged physical impairments. The Court, however, notes that the ALJ did address and make findings regarding Dr. Padilla's September 2017 psychological evaluation report, the subject of Judge Vidmar's 2019 decision, but the Court does not further discuss such findings because they are irrelevant to the instant appeal. *See* AR at 714–15.

"under a disability within the meaning of the Social Security Act from February 27, 2012," through January 17, 2017. AR at 702.

### A.  Steps One Through Three

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR at 703.[7] At step two, the ALJ determined that Plaintiff had the following severe impairments: "degenerative disc disease; degenerative joint disease; carpal tunnel syndrome; obesity; and sciatica." *Id.* at 704. The ALJ also considered Plaintiff's other claimed impairments but found them to be non-severe. AR at 704–05.[8] At step three, the ALJ found that Plaintiff did not have "an impairment or combination of impairments that [met] or medically equal[ed] the severity of" a listed impairment. AR at 708–09.

### B.  Step Four[9]

#### 1.  *Residual Functional Capacity ("RFC")*[10]

After considering the record, the ALJ found that Plaintiff had the RFC to perform sedentary[11] work with the additional limitations of:

---

[7] The ALJ also found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2017, which is required to be entitled to a period of disability and disability insurance benefits. AR at 702; *see generally* 42 U.S.C. §§ 416(j), 423; 20 C.F.R. § 404.101 (2019).

[8] The ALJ did not find Plaintiff's plantar fasciitis to be a severe impairment because the evidence did not demonstrate that the condition had an impact on her functioning for twelve consecutive months during the relevant time period. AR at 704. Similarly, the ALJ found that Plaintiff's mental impairments of depression and anxiety did not cause more than a minimal limitation in her ability to perform "basic mental work activities." *Id.* at 704–05.

[9] The Tenth Circuit has described step four of the sequential evaluation process as occurring in three distinct phases. *Winfrey*, 92 F.3d at 1023. In phase one, the ALJ evaluates a claimant's physical and mental residual functional capacity. *Id.* In phase two, the ALJ assesses the physical and mental demands of the claimant's past relevant work. *Id.* Last, the ALJ applies the phase one findings to the phase two findings to determine whether, given the claimant's RFC, she could meet the physical and/or mental demands of her past relevant work. *Id.*

[10] The RFC describes the most a claimant can do despite her limitations. 20 C.F.R. § 416.945(a)(1).

[11] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like

> Lifting ten pounds occasionally and less than ten pounds frequently; carrying ten pounds occasionally and less than ten pounds frequently; sitting for six hours and standing and/or walking for two hours; pushing and pulling as much as she can lift and carry. [Plaintiff] can handle items frequently with the left hand and can handle items frequently with the right hand. [Plaintiff] has fingering limitations frequently with the left hand and fingering limitations frequently with the right hand. [Plaintiff] can climb ramps and stairs occasionally; can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneeling [sic], crouch, and crawl. [Plaintiff's] time off task can be accommodated by normal breaks.

AR at 710. In doing so, the ALJ noted that Plaintiff alleged that she was disabled by pain in her hips, knees, back, and wrists. AR 710. The ALJ determined, however, that while Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, her "statements concerning the intensity, persistence and limiting effect of [those] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 710–11.

In developing the RFC, the ALJ reviewed the objective medical evidence. The ALJ observed that Plaintiff reported severe back and hip pain, which were the result of a 2012 automotive accident. AR at 711 (citing AR at 296, 302). In 2012, imaging revealed "degenerative changes at L4-5 and L5-S1, but no evidence of disc radiation, significant spinal stenosis, or neural foraminal narrowing." *Id.* (citing AR at 333). In 2014, Plaintiff was observed to have full strength in the lower extremities and had a normal range of motion (without pain) in the lumbar spine. *Id.* at 711–12 (citing AR at 1198, 1201). Between 2013 and 2015, Plaintiff reported pain relief with trigger point injections. *Id.* (citing AR at 358, 308, 318, 353–54, 422).

Later in 2015, Plaintiff complained of severe back pain and underwent a L4-5 discectomy[12]

---

docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[12] Sometimes spelled "diskectomy," a discectomy "is a surgical procedure to remove the damaged portion of a

for treatment. *Id.* at 712 (citing AR at 426, 431, 512). Plaintiff reported thereafter feeling much better. *Id.* (citing AR at 445). In January 2016, Plaintiff displayed "normal strength, tone, reflexes, and sensation." *Id.* (citing AR at 480). In May 2016, Plaintiff reported "an increased tolerance for walking and lifting moderate weight" but had trouble with sitting for a prolonged period, driving, and heavy housework. *Id.* (citing AR at 546). In August 2016, Plaintiff disclosed that she was better able to manage and control her pain. *Id.* (citing AR at 571).

The ALJ also addressed the objective medical evidence relating to Plaintiff's knee pain and carpal tunnel syndrome. The ALJ observed that although Plaintiff's right[13] knee displayed mild degenerative disease, she was able to walk without the use of an assistive device and often displayed intact functioning as well as a full range of motion. *Id.* at 713 (citing AR at 334, 475, 480, 489, 968, 974, 468). The ALJ also noted that while Plaintiff sought treatment for carpal tunnel syndrome, the record did not reflect "extensive limitation of the upper extremities." AR at 713–14 (citing AR at 452, 464, 477–78, 480, 574).

Importantly, the ALJ found that Plaintiff's "activities of daily living—such as walking, gardening, attending and cleaning up after multiple parties in a single day, taking her sister to appointments, taking care of her husband, taking care of her dogs, babysitting, and volunteering at a veterinary office—all indicate[d] a higher level of functioning than alleged." AR at 714 (citing AR at 230–45, 340, 512, 546, 551, 640, 957–58, 980, 982).

Last, the ALJ considered the opinion evidence of state agency consultants, Drs. Lammers and DeBorja. AR at 715. Both consultants concluded that Plaintiff was "capable of performing work

---

herniated     disk     in     [the]     spine."     Diskectomy,     Mayo     Clinic,     https://www.mayoclinic.org/tests-procedures/diskectomy/about/pac-20393837 (last visited Jan. 13, 2021).
[13] Plaintiff also had a history of surgery on her left knee. AR at 713 (citing AR at 488).

at the *light* exertional level." *Id.* (emphasis added).[14] These opinions were accorded "significant weight" because of the doctors' "familiarity with Social Security disability standards" and because the opinions were consistent with other evidence in the record. *Id.* at 715–16. Notably, the ALJ tempered these opinions in favor of Plaintiff by finding that the record supported further limitation to the *sedentary* exertional level with additional limitations. *Id.* at 716.

### 2.  *Past Relevant Work*

Before her alleged disability onset date, Plaintiff worked as a security guard and a housekeeper. AR at 716. Both positions are considered to require "light exertion." *Id.*  Based on the vocational expert's responses to hypothetical questions, the ALJ determined that the exertional demands of Plaintiff's past relevant worked exceeded her RFC. *Id.* Consequently, the ALJ's analysis proceeded to step five. *Id.*

### C.    **Step Five**

"Considering [Plaintiff's] age, education, work experience, and [RFC]," the ALJ found that there were jobs that existed in "significant numbers in the national economy" that Plaintiff could perform. AR at 717. The ALJ acknowledged that Plaintiff's "ability to perform all or substantially all of the requirements of [sedentary] work ha[d] been impeded by additional limitations." AR at 717. Nevertheless, relying on the vocational expert's testimony,  the ALJ found that Plaintiff could perform the requirements of representative occupations such as: (1) surveillance system monitor; (2) food and beverage order clerk; (3) document preparer; (4) clerical mailer; and (5) touch up

---

[14] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

screener. *Id.* Because the ALJ found that Plaintiff could have made a successful adjustment to other work, he determined that Plaintiff was not disabled between February 27, 2012, and January 17, 2017. AR at 718.

## V.   DISCUSSION

At issue is whether the ALJ correctly applied the pain assessment test set forth in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). More specifically, the question is whether the ALJ's analysis at step three of *Luna* requires remand. ECF 19 at 11–14. Recall that this step requires the ALJ to consider all the evidence (objective and subjective) in evaluating whether the claimant's pain is in fact disabling. *Kepler v. Chater*, 68 F.3d 387, 390 (10th Cir. 1995) (quoting *Luna*, 834 F.2d at 163). As noted *supra* at 3, Plaintiff brings three challenges to the ALJ's step-three *Luna* analysis.

### A.   The ALJ Linked the Pain Analysis to Substantial Evidence in the Record

Plaintiff argues that the ALJ "did not provide the link required between [Plaintiff's] complaints of pain and her health history." ECF 19 at 11. The Tenth Circuit has held that while credibility determinations are "peculiarly the province" of the ALJ, an ALJ's credibility finding must be "closely and affirmatively linked to substantial evidence." *Kepler*, 68 F.3d 387 (quoting *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)); *Huston v. Bowen*, 838 F.2d 1125 (10th Cir. 1998)). As correctly noted by Plaintiff, ECF 19 at 11, the use of boilerplate language does not suffice. *Miller v. Astrue*, 496 F. App'x 853, 857 (10th Cir. 2012) (unpublished) (citing *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004)). But an ALJ who "sets forth the specific evidence he relies on in evaluating the claimant's credibility" satisfies *Kepler*'s mandate. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Here, the ALJ satisfied this mandate.

The ALJ "did more than 'recite the general factors he considered.'" *See Miller*, 496 F. App'x

at 857 (quoting *Qualls*, 206 F.3d at 1372)). The ALJ's pain analysis roughly consumed over three and half pages of his single-spaced opinion. *See* AR at 710–14. Therein, the ALJ meticulously described Plaintiff's complaints of pain, the procedures she underwent to treat each source of pain, and the evidence the ALJ believed contradicted Plaintiff's assertion that her pain "was in fact disabling." *Id.*; *see Luna*, 834 F.2d at 163. For example, the ALJ observed that Plaintiff reported that she "experienced occasional falls and stable pain" in late 2012. AR at 711 (citing AR at 354). In support of his finding that Plaintiff's pain was not disabling, the ALJ also cited that Plaintiff walked for exercise (without the use of an assistive device) and experienced success with treatment. *Id.* (citing AR at 308, 318, 353–54). In addition, the ALJ observed that Plaintiff frequently engaged in work-like activities such as babysitting or volunteering. AR at 714; *see, e.g.*, AR at 541, 640, 980–82. These are just some examples of the manner in which the ALJ tied his determination to substantial evidence in the record. *See* AR at 711–14; *see Qualls*, 206 F.3d at 1372; *see also Polson v. Astrue*, 508 F. App'x 705, 708 (10th Cir. 2013) (unpublished) (holding that because the ALJ "did more than merely recite boilerplate language" and provided "specific reasons for his credibility determination," linking it "to the evidence, as required," the ALJ "properly evaluated" the plaintiff's credibility); *Miller*, 496 F. App'x at 857–58 (holding that an ALJ's citations to plaintiff's objective medical records and reports of daily activities were sufficient to uphold the ALJ's credibility determination). Moreover, to the extent that Plaintiff asks the Court to reweigh the evidence,[15] the Court must decline any such invitation. *See Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014).

---

[15] Plaintiff insists that "the ALJ appears to have overlooked certain aspects of the treatment records that he relied upon as instances of inconsistency." ECF 19 at 11. Plaintiff takes these purported oversights as evidence that the "ALJ did not sufficiently articulate specific reasons for questioning [Plaintiff's] credibility." ECF 19 at 12. But because the ALJ's credibility findings were "closely and affirmatively linked to substantial evidence," Plaintiff's argument amounts to an "impermissible reweighing of the evidence." *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

**B.  The ALJ Did Not Err by Citing Plaintiff's Daily Activities to Support Credibility Determination**

Plaintiff asserts that the ALJ overemphasized the degree to which Plaintiff's daily activities demonstrated that her pain was not disabling. *See* ECF 19 at 12–13 ("[Plaintiff's] minimal activities often performed sporadically or on occasion should *not* discredit [Plaintiff's] allegations of pain." (emphasis in original)). An ALJ may weigh and evaluate "numerous factors in determining the credibility of pain testimony," including "the nature of [a claimant's] daily activities." *Huston*, 838 F.2d at 1132; *see also Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013) (same) (citing *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010)). An ALJ must be mindful, however, that "sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity." *Krauser v. Astrue*, 638 F.3d 1324, 1333 (10th Cir. 2011) (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)).

The Court concludes that the ALJ did not err in considering Plaintiff's daily activities. Although reasonable minds could debate whether activities like attending and cleaning up after multiple parties qualifies as a "daily activity," the ALJ did point to several daily (or at least non-sporadic) activities that do indicate a higher level of functioning than alleged. AR at 714. For example, Plaintiff regularly gardened and reported that she walked for exercise. *See, e.g.*, AR at 340, 354, 441, 486, 546, 553, 554, 555. And the Court is unpersuaded that Plaintiff's oft-reported soreness after engaging in some of the activities cited made it impermissible for the ALJ to consider those activities in finding that Plaintiff's pain was not disabling. *C.f. Brown v. Bowen*, 801 F.2d 361, 362–63 (10th Cir. 1986) ("[D]isability requires more than mere inability to work without pain."). Moreover, even if the cited activities when viewed in isolation were insufficient to find that Plaintiff's pain was not disabling, the overwhelming majority of the ALJ's pain analysis relied on

the objective medical evidence, which indicated that Plaintiff was an independent ambulator, had full range of motion in her joints, and underwent treatment (both conservative and surgical) that was often effective. AR 711–14. Accordingly, the ALJ did not improperly cite "sporadic performance of household tasks or work" as *establishing* that Plaintiff's pain was not disabling. *See Krauser*, 638 F.3d at 1333. If anything, the ALJ's discussion of Plaintiff's daily activities merely affirmed what the objective medical evidence already established.

### C.  The ALJ Considered Plaintiff's Attempts to Seek Treatment for Hip and Back Pain

Finally, Plaintiff argues that the "ALJ's pain analysis failed to consider that [Plaintiff's] persistent attempts to obtain relief from her chronic back pain as well as pain in her hips served to *enhance* the intensity and distress she suffer[ed] due to her symptoms." ECF 19 at 13 (emphasis added). The Tenth Circuit has held that, in evaluating a claimant's pain, an ALJ should consider the claimant's attempts to seek treatment for that pain and her willingness to try any treatment prescribed. *Luna*, 834 F.2d at 165.

Plaintiff's position is without merit. The Court begins by observing that Plaintiff does not identify nor, after reviewing the record, is the Court aware of a treatment that Plaintiff underwent (within the relevant period considered by the ALJ) after which her symptoms became *worse. See* ECF 13–14.[16] To the extent Plaintiff's position is better framed as arguing that the ALJ did not fully consider her attempts to seek treatment (as well as the efficacy of any such treatment), it is also

---

[16] Plaintiff appears to identify a *February 2017* surgery as an example of treatment, intended to relieve her pain symptoms, after which she was left worse off. ECF 19 at 14 (citing AR at 629). Assuming *arguendo* that this surgery did in fact exacerbate Plaintiff's symptoms, the Court agrees with the Commissioner in that the inclusion of this surgery as part of Plaintiff's argument is at least curious if not misleading. After all, the ALJ was instructed to *only* consider whether Plaintiff was disabled between February 27, 2012 (her alleged disability onset date), and January 17, 2017. AR at 802. The February 2017 surgery, therefore, was irrelevant to the period considered by the ALJ.

without merit. For instance, the ALJ expressly addressed Plaintiff's treatment consisting of "physical therapy, message therapy, steroid injections, and a TENS[17] unit." AR at 711 (citing AR at 297, 308, 321, 340–49, 394, 474). And the ALJ acknowledged that some components of the treatment were not always effective. *See e.g.*, AR at 711 ("noting . . . no significant relief from physical therapy" *Id.* (citing AR at 354)); *see also* AR at 712 ("[Plaintiff] reported continuing to have good results from injections, but noted that the results only last[ed] for a couple of weeks." *Id.* (citing AR at 358)). Because the ALJ considered Plaintiff's attempts to seek treatment for her symptoms, the Court considers Plaintiff's position to the contrary as a request that the Court reweigh the evidence. The argument fails for that reason. *See Hackett*, 395 F.3d at 1173.

## VI.  CONCLUSION

The ALJ applied the correct legal standards and his findings and decision were supported by substantial evidence.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's final decision be **AFFIRMED**, that Plaintiff's Motion be **DENIED**, and that the instant cause be **DISMISSED WITH PREJUDICE**.

---

[17] "TENS" stands for "transcutaneous electrical nerve stimulation." Self-Care Approaches to Treating Pain, Mayo Clinic, https://www.mayoclinic.org/self-care-approaches-to-treating-pain/art-20367322 (last visited Jan 15, 2021). A TENS device "helps relieve pain by delivering low-level, pulsed electrical currents that pass through the skin to the area of pain. These currents stimulate . . . peripheral nerves to induce pain relief." *Id.*

**SO RECOMMENDED.**

_____

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.